**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 18-cv-00594-CMA-MEH

MICHAEL W. BRUZGA, and
CAROLE A. ZOLNICK,

    Plaintiffs,

v.

COUNTY OF BOULDER, acting by and through the Board of County Commissioners,
DEB GARDNER, in her official capacity as a Boulder County Commissioner,
CINDY DOMENICO, in her official capacity as a Boulder County Commissioner, and
ELISE JONES, in her official capacity as a Boulder County Commissioner,

    Defendants.

---

**ORDER ADOPTING THE OCTOBER 19, 2018 RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE MICHAEL E. HEGARTY**

---

This matter is before the Court on the Recommendation (Doc. # 55) of United States Magistrate Judge Michael E. Hegarty, wherein he recommends that this Court grant Defendants County of Boulder, Deb Gardner, Cindy Domenico, and Elise Jones' (collectively, "the County" or "Defendants") Motion to Dismiss First Amended Complaint for Deprivation of Civil Rights (Doc. # 23). Plaintiffs Michael Bruzga and Carole Zolnick[1]

---

[1] When a party proceeds *pro se*, the Court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). The Court notes that Plaintiff Bruzga is an attorney licensed to practice in Colorado. (Doc. # 58 at 4.) The Court further notes that the liberal standard afforded to *pro se* litigants does not apply to licensed attorneys. *Comm. On the Conduct of Attorneys v. Oliver*, 510 F.3d 1219, 1223 (10th Cir. 2007). However, Plaintiff Zolnick

filed an Objection (Doc. # 56) to the Recommendation on November 2, 2018, and Defendants filed a Response (Doc. # 58) on November 16, 2018. For the reasons that follow, the Court adopts the Recommendation and grants Defendants' Motion.

## I. **BACKGROUND**

The Magistrate Judge's Recommendation provides a recitation of the factual and procedural background of this dispute and is incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). Accordingly, this Order will reiterate only what is necessary to address Plaintiffs' objections.

In September 2013, Plaintiffs' home was damaged by heavy rainfall and flooding that caused Boulder County to be designated a local and federal disaster area. On December 4, 2014, Plaintiffs were awarded $32,812 in Community Development Block Grant-Disaster Recovery (CDBG-DR) funds[2] for the purpose of repairing the flood-related damage. (Doc. 14-4 at 2.) Based on conversations Plaintiffs had with personnel

---

does not appear to be an attorney, and Plaintiff Bruzga is not representing Plaintiff Zolnick. Therefore, out of consideration for Plaintiff Zolnick, the Court will proceed under the liberal standard applicable to *pro se* plaintiffs generally. However, it is not "the proper function of the district court to assume the role of advocate for the *pro se* litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Additionally, a *pro se* litigant is still bound by the rules of federal and appellate procedure. *Abdelsamed v. United States*, 13 F. App' x 883, 884 (10th Cir. 2001).

[2] The Department of Housing and Urban Development awarded CDBG-DR funds to the state of Colorado and affected communities, including Boulder County, "to be used for disaster-related expenses. (Doc. # 14-2 at 2.) Boulder County established the CDBG-DR Housing Rehabilitation Program ("Rehab Program") to administer the funds. The Rehab Program allows private homeowners to apply to Boulder County for a grant or loan to be used for eligible rehabilitation expenses. The maximum grant or loan amount is capped at $100,000 per residence. Boulder County's Board of County Commissioners delegated responsibility for the overall management of the Rehab Program to the CDBG-DR Funding Panel, which "possess authority, within the[] program guidelines, to approve or deny all applications for awards." (*Id.* at 16–17.) Work performed under the Rehab Program must be completed in compliance with local building codes. Boulder County regulates building contractors and requires appropriate licenses.

involved with the CDBG-DR program, Plaintiffs believed that the remainder of the $100,000 maximum per residence had been reserved for them as well. (Doc. # 14 at 6.)

On February 3, 2015, Plaintiff Bruzga signed a Beneficiary Agreement, which provided, *inter alia*, that "Grantee's obligation under this Agreement to provide funds for housing rehabilitation funding is expressly made contingent on [Plaintiff Bruzga's] continued eligibility for and compliance with Grantee's CDBG-DR program." (Doc. # 14-17.)

However, by letter dated March 11, 2016, the Board of County Commissioners informed Plaintiff Bruzga that the CDBG-DR award had been canceled. (Doc. # 14-22 at 1.) The letter indicated that the reason for cancelation was Plaintiff Bruzga's failure to comply with various CDBG-DR program conditions. Specifically, the letter noted that Plaintiff Bruzga had not complied with the Beneficiary Agreement because he allegedly failed to: (1) "[r]emedy any existing Land Use Code and Building Code violations relating to unauthorized work at [Plaintiffs'] home"; (2) "[r]epair . . . any damage or unauthorized work on [Plaintiffs'] home"; and (3) submit a "signed Contractor Addendum and . . . project schedule that would assure the County that [Plaintiffs'] project was making progress toward completion." At that point, the County had made payments to various contractors totaling $6,869.58.

Plaintiffs dispute the factual assertions in the termination letter, arguing that the County's revocation of their benefits was wrongful. (Doc. # 14 at 24.) In the operative First Amended Complaint, Plaintiffs claim that the remainder of the CDBG-DR award, and other funding they discussed with the County, constitutes an entitlement which was

3

deprived by the County without due process of law. (Doc. # 14 at 22.) Plaintiffs also seek injunctive relief under the Americans with Disabilities Act ("ADA"). (*Id.* at 26.) In his Recommendation, Magistrate Judge Hegarty concluded that that both claims should be dismissed. (Doc. # 55 at 2.)

Plaintiffs' Objection to the Recommendation specifically pertains to the magistrate judge's analysis of Plaintiffs' due process claim. (Doc. # 56.) Plaintiffs do not object to the Recommendation regarding their ADA claim.[3]

## II. STANDARDS OF REVIEW

### A. REVIEW OF A RECOMMENDATION

When a magistrate judge issues a recommendation on a dispositive matter, Fed. R. Civ. P. 72(b)(3) requires that the district judge "determine de novo any part of the magistrate judge's [recommended] disposition that has been properly objected to." An objection is properly made if it is both timely and specific. *United States v. One Parcel of Real Property Known As 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir. 1996). Additionally, "[i]ssues raised for the first time in objections to [a] magistrate judge's recommendation are deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996). In conducting its review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

---

[3] With regard to Plaintiffs' ADA claim, the Court concludes that Magistrate Judge Hegarty's analyses and recommendations are correct and that "there is no clear error on the face of the record." Fed. R. Civ. P. 72 Advisory Committee's Note; *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) ("In the absence of timely objection, the district court may review a magistrate[] [judge's] report under any standard it deems appropriate.").

**B.    MOTION TO DISMISS**

The Court may dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. Pro. 12(b)(6). To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The scope of the allegations may not be "so general that they encompass a wide swath of conduct, much of it innocent" or else the plaintiff has "'not nudged [his] claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

### III.    ANALYSIS

Plaintiffs object only to the Recommendation's analysis of their due process claim. Therefore, the Court's de novo review is limited to that issue.

The Fourteenth Amendment prohibits any state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To

assess whether an individual has established a claim of procedural due process under § 1983, "courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Merrifield v. Bd. of Cty. Comm'rs*, 654 F.3d 1073, 1078 (10th Cir. 2011).

Because the Court concludes that Plaintiffs failed to establish the second element, the Court need not address the first element of Plaintiffs' § 1983 claim. *See Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189 (2001) (assuming, without deciding, that the contract at issue was a constitutionally-protected property interest and, instead, basing its decision on adequacy of process). Therefore, the Court assumes, *arguendo*, that Plaintiffs have a constitutionally-protected property interest and that Plaintiffs were deprived of this property. The Court proceeds directly to the second element of the inquiry—the adequacy of process.

Under *Lujan*, whether a deprivation occurred without due process depends on whether available state law process can constitute "due process." *Id.* at 195–97. *Lujan*, like the instant case, involved a contract-based property deprivation. *See id.* at 196. There, a state agency determined that a subcontractor on a public works project violated the state's labor code, and the agency issued notices directing the subcontractor's payment to be withheld. *Id.* at 191–93. The subcontractor sued the state parties under § 1983, claiming that the issuance of the notices without a hearing violated its due process rights. *Id.* at 193.

The Court explained that the subcontractor "ha[d] not been denied any present entitlement" but merely a "payment that it contends it is owed under a contract," which in turn is an interest "that can be fully protected by an ordinary breach-of-contract suit." *Id.* at 196. The Court held that if a state "makes ordinary judicial process available to [a private party] for resolving its contractual dispute, *that process is due process.*" *Id.* at 197 (emphasis added).

The First, Sixth, and Ninth Circuits have further explained the principle established in *Lujan*. The Ninth Circuit has held that a "common law breach of contract claim provides adequate process for the deprivation of a property right derived from a contract, *unless* the deprivation constitutes a denial of a present entitlement," which is "a right by virtue of which [one is] presently entitled either to exercise ownership dominion over real or personal property, or to pursue a gainful occupation." *DeBoer v. Pennington*, 287 F.3d 748, 749–50 (9th Cir. 2002) (emphasis added) (citing *Lujan*, 532 U.S. at 195–96). In *DeBoer*, the Ninth Circuit explained:

> In the circumstances presented here, the [plaintiffs], like the plaintiff in *Lujan*, are fully protected by an ordinary breach of contract suit. Although the deprivation to the [plaintiffs], being the total termination of the contract, is greater than that suffered by the plaintiff in *Lujan*, *the interest injured is still merely a contractual interest and the injury to the [plaintiffs] is no more than a contractual injury*. In other words, the contract here has not given rise to a greater interest than the contract itself, and so a wrongful termination of the contract may be fully remedied by a common law breach of contract claim.

*Id.* (emphasis added). Additionally, the Sixth Circuit has noted, "it is neither workable nor within the intent of section 1983 to convert every breach of contract claim against a state into a federal claim." *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. App'x 826,

7

831 (6th Cir. 2009), *cert. denied*, 558 U.S. 880 (2009). Finally, the First Circuit has held that "[a] claim of breach of contract by a state actor without 'any indication or allegation that the state would refuse to remedy the plaintiffs' grievance should they demonstrate a breach of contract under state law,' does not state a claim for violation of the plaintiffs' right of procedural due process." *Ramirez v. Arlequin*, 447 F.3d 19, 25 (1st Cir. 2006) (quoting *Casey v. Depetrillo*, 697 F.2d 22, 23 (1st Cir. 1983) (per curiam)).

In the instant case, Plaintiffs have allegedly been denied a payment they are owed under a contract, which is an interest "that can be fully protected by an ordinary breach-of-contract suit." *Lujan*, 532 U.S. at 196. Specifically, Plaintiffs allege that they entered into various agreements with the County in which the County agreed to pay for repairs to Plaintiffs' home. (Doc. # 14 at 23.) Plaintiffs further allege that the County wrongly terminated the agreements. (*Id.*) Therefore, the basis of any contractual interest Plaintiffs may have is purely financial, *McCracken v. Lockwood Sch. Dist. No. 26*, 208 F. App'x 513, 515–16 (9th Cir. 2006), and Plaintiffs "do not allege that there is no complete and adequate remedy available under state law for the breach of contract." *Ramirez v. Arlequin*, 447 F.3d 19, 25 (1st Cir. 2006). In fact, it is "clear beyond question that Colorado provides a remedy for breach of contract . . . ." *211 Eighth, LLC v. Town of Carbondale*, 922 F. Supp. 2d 1174, 1183 (D. Colo. 2013). Moreover, the Beneficiary Agreement indicates:

> The laws of the State of Colorado shall govern the interpretation and enforcement of this Agreement. Any litigation that may arise between the parties involving the interpretation or enforcement of the terms of this Contract *shall be initiated and pursued by the parties in the Courts of the 20th Judicial District of the State of Colorado and the applicable Colorado Appellate Courts*.

8

(Doc. # 14-17 at 8) (emphasis added). Therefore, not only does the state of Colorado provide an adequate forum for Plaintiffs' claims, but that was the forum Plaintiff Bruzga voluntarily selected when he accepted the terms of the Beneficiary Agreement.

A state court action may be inadequate—and pre-deprivation procedures therefore required—if a plaintiff is denied a present entitlement to "exercise ownership dominion over real . . . property . . . ." *Baird v. Bd. of Educ. for Warren Cmty. Unit*, 389 F.3d 685, 691 (7th Cir. 2004), *cert. denied*, 546 U.S. 811 (2005) (citation and internal quotation marks omitted). However, Plaintiffs here were not denied any such right. *See Lujan*, 532 U.S. at 196. Rather, Plaintiffs "simply allege that they were denied the benefit of their bargain." *Town of Carbondale*, 922 F. Supp. 2d at 1183; *see* (Doc. # 56 at 4) (noting the rights Plaintiffs allege to have been violated are "based on rights under state contract law . . . .").

The pre-deprivation procedures mandated by due process are not implicated in these circumstances. *Id.* (citing *Lujan*, 532 U.S. at 196). Accordingly, as in *Lujan*, a post-deprivation claim for breach of contract is adequate process because Plaintiffs' claim is for a deprivation "of payment that [they] contend [to be] owed under a contract, based on the State's determination that [Plaintiffs] failed to comply with the contract's terms. [Plaintiffs] [have] only a claim that they did comply with those terms and therefore that [they are] entitled to be paid in full." *Lujan*, 532 U.S. at 196.

Therefore, because "the interest injured is still merely a contractual interest and the injury to [Plaintiffs] is no more than a contractual injury," Plaintiff's § 1983 claim fails

as a matter of law. *DeBoer*, 287 F.3d at 750; *see, e.g.*, *McCracken*, 208 F. App'x at 515–16.

## IV.  CONCLUSION

For the foregoing reasons, the Court ORDERS that Magistrate Judge Hegarty's Recommendation (Doc. # 55) is AFFIRMED AND ADOPTED. It is

FURTHER ORDERED that Defendants' Motion to Dismiss First Amended Complaint for Deprivation of Civil Rights (Doc. # 23) is GRANTED. It is

FURTHER ORDERED that Plaintiffs' claims are DISMISSED WITH PREJUDICE because an amended complaint would be subject to dismissal for the reasons stated in this Order. *Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1288 (10th Cir. 2008). It is

FURTHER ORDERED that Plaintiffs' motion titled, (Unopposed?) Motion to Withdraw/Dismiss ADA Claim (Doc. # 57) is DENIED AS MOOT.

DATED: March 14, 2019

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge